**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KELLY SIMONE,** | : | **Civil Action No.** |
| **2433 S 16th Street** | : | |
| **Philadelphia, PA 19145** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **BALLARD SPAHR LLP** | : | |
| **1735 Market Street, 51st Floor** | : | |
| **Philadelphia, PA 19103** | : | |
| | : | |
| **EPIQ GLOBAL BUSINESS** | : | |
| **TRANSFORMATION SOLUTIONS,** | : | |
| **LLC,** | : | |
| **1735 Market Street, 51st Floor** | : | |
| **Philadelphia, PA 19103** | : | |
| | : | |
| **2 Racinia Drive NE, Suite 850/200** | : | |
| **Atlanta, GA 30346** | : | |
| **Defendants.** | : | |

## CIVIL ACTION

Plaintiff, Kelly Simone (hereinafter "Plaintiff"), by and through her attorney, Koller Law,

LLC, bring this civil matter against Ballard Spahr LLP and Epiq Global Business Transformation

Solutions, LLC (hereinafter "Defendants"), for violations of the Americans with Disabilities Act

of 1990, as amended ("ADA"), Title VII of the Civil Rights Act of 1964, as amended ("Title VII"),

the Age Discrimination in Employment Act ("ADEA"), the Pennsylvania Human Relations Act

("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO").  In support thereof, Plaintiff avers as follows:

<u>**THE PARTIES**</u>

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Defendant Ballard Spahr is law firm with a location and corporate headquarters located at 1735 Market Street, 51st Floor, Philadelphia, PA 19103.

4. Upon information and belief, Defendant Epiq Global Business Transformation Solutions, LLC is a global technology and legal services company operating out of Defendant Ballard Spahr's location at 1735 Market Street, 51st Floor, Philadelphia, PA 19103 and corporate headquarters at 2 Racinia Drive NE, Suite 850/200, Atlanta, GA 30346.

5. At all times relevant hereto, Defendants employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

6. At all times relevant hereto, Defendants employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

<u>**JURISDICTION AND VENUE**</u>

7. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

8. The Court may properly maintain personal jurisdiction over Defendants because the

Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

9. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

10. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

11. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

13. Plaintiff exhausted her administrative remedies under the ADA, Title VII, the ADEA, the PHRA and the PFPO.

14. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on July 1, 2024, alleging disability, gender and age discrimination and retaliation against Defendants.

15. The Charge was assigned a Charge Number 530-2024-03202 and was dual filed with the

Pennsylvania Human Relations Commission ("PHRC").

16. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated June 2, 2025.

17. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

18. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two years of the issuance of the Right to Sue in this matter as it relates to her PHRA claims.

19. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

20. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

21. Plaintiff is female and was born in 1967.

22. In or around 2006, Defendant Ballard Spahr hired Plaintiff.

23. Plaintiff was well qualified for her position and performed well.

24. In or around September 2016, Defendant Ballard Spahr outsourced Plaintiff's department to Defendant Epiq Global (formerly DTI) with full seniority and benefits.

25. Plaintiff became jointly employed by both Defendants at this time.

26. Both Defendants maintained control over Plaintiff's employment and are both covered entities under the applicable statutes.

27. The last position that Plaintiff held was Records Manager at Defendant Epiq Global and Records Supervisor at Defendant Ballard Spahr.

28. Plaintiff was well qualified for her position and performed well.

29. Plaintiff has the serious medical conditions of Interstitial Lung Disease, HFpEF (heart failure and Ankylosing spondylitis which are considered to be disabilities under the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO").

30. The major life activities affected by Interstitial Lung Disease, HFpEF (heart failure) and Ankylosing spondylitis, include, but are not limited to, lifting, performing manual tasks, breathing, respiratory function and circulatory function.

31. Plaintiff provided Defendant Ballard Spahr with a doctor's note detailing each of her disabilities upon diagnosis.

32. As a result of her disabilities, Plaintiff had difficulty lifting heavy objections, traveling for work, breathing and doing physical labor.

33. Plaintiff could still perform her essential job functions at both Defendants.

34. Since in or around 2011, Defendant Ballard Spahr granted Plaintiff the reasonable medical accommodation of having an air purifier in her office and putting plastic over dusty doorways to help Plaintiff's breathing.

35. In or around 2013/2014, Plaintiff had Spinal Fusion Neck Surgery at Thomas Jefferson University Hospital.

36. Plaintiff remained on Short Term Disability ("STD") leave for three (3) months.

37. During this time, Plaintiff got diagnosed with Ankylosing spondylitis which worsened Plaintiff's ability to lift heavy objects.

38. In or around 2019, Defendant Ballard Spahr promoted Kevin Baughman (late 30's, male, non-disabled), to be a National Records Manager, a newly created position, despite the fact that Plaintiff had more experience as a Records Manager.

39. Prior to this, Baughman held a lower position than Plaintiff.

40. This position was created just for Baughman.

41. In this position, Baughman oversaw several smaller locations.

42. Defendant Epiq Global asked Plaintiff to guide Baughman in this role because of her experience and knowledge in the field.

43. John Delp (male, non-disabled), Global Director for Defendant Epiq Global, and Jennifer Spears (non-disabled), Director for Defendant Epiq Global, told Plaintiff during an in-person meeting that she was not considered for this role because of her disability restrictions.

44. However, Plaintiff continued to report to the office five (5) days per week and covered three (3) departments during the COVID-19 pandemic, while Baughman refused to come in.

45. In or around June 2023, Plaintiff emailed Delp.

46. Plaintiff asked if there was another position she could do that would require her to complete billing or accounting only because of the concern about Plaintiff's ability to do physical work.

47. Delp said that Defendant Epiq Global did not handle these types of positions.

48. In or around October 2023, Plaintiff's doctor, Dr. Michael Attanasio, Primary Care Physician, placed Plaintiff on a ten (10) pound lifting restriction due to her disabilities.

49. Plaintiff emailed a doctor's note detailing this to Noah Grochowaski, Lead Manager of Defendant Epiq Global.

50. Around the same time, Defendant Epiq Global had an open records position at one of their other clients, DLA Piper.

51. However, Delp immediately gave the position to Dave Ruff (30's, male, non-disabled) without considering Plaintiff for the role.

52. Prior, Ruff had been working in mail room at Defendant Ballard Spahr and had no records experience.

53. Plaintiff questioned Delp about this.

54. Delp responded that Ruff was "such a nice young guy."

55. In or around the end of October 2023, Plaintiff received a random survey from Defendant Epiq Global via email.

56. The survey was one sentence with the opportunity to provide a yes or no response only.

57. The survey asked if you had ever been disabled.

58. Plaintiff responded in the affirmative.

59. Shortly after the survey was sent out, Delp met in person with Plaintiff.

60. Delp stated that Plaintiff position would be eliminated starting January 1, 2024.

61. However, Delp then stated that they would be keeping a Records Manager position at Defendant Ballard Spahr, but adding the requirements of travel and thirty (30) plus pound lifting.

62. Delp stated Plaintiff was welcome to apply to the role, knowing that she would be unable to meet the requirements due to her disabilities.

63. Further, Plaintiff already was holding this role and should not have had to reapply for it.

64. In or around November 2023, Plaintiff began to report to a new manager at Defendant Ballard Spahr, Michelle Raske.

65. From her start, Baughman continuously commented to Raske that Plaintiff was "too slow".

66. Baughman also commented to Raske that Plaintiff was not able to lift heavy records file boxes.

67. However, Raske never asked Plaintiff why this was the case.

68. Raske never even met with Plaintiff individually to discuss her performance.

69. Delp told Plaintiff he would email her open remote positions.

70. Delp never followed up about this.

71. Delp stopped responding to Plaintiff's emails about open remote positions.

72. Delp began telling Defendant Ballard Spahr that Plaintiff was leaving because she turned down a position she was offered.

73. This statement was false.

74. Delp also stated Plaintiff could not receive severance because she had not worked for Defendant Epiq Global for over ten (10) years.

75. However, when her work was outsourced to Defendant Epiq Global in 2016, Plaintiff was grandfathered in and kept her seniority.

76. Further, Delp told Plaintiff that she should not "bother to apply for unemployment" because he would "deny it."

77. Plaintiff applied directly to Defendant Ballard Spahr's Records Department, but was told that there was a hiring freeze.

78. In or around early December 2023, Delp asked Plaintiff to continue working through January 12, 2024 because Defendant had not found her replacement.

79. Plaintiff agreed to work through January 5, 2024.

80. Delp told Plaintiff if she "stayed quiet about all this," and threatened to take away her Christmas bonus if she said anything to Defendant Ballard Spahr about her employment ending.

81. Shortly after, Delp informed Plaintiff that her Records Manager position through Defendant Ballard Spahr with the new requirements was given to Baughman without any interviews for the position.

82. Plaintiff held this position prior to Defendant Ballard Spahr outsourcing it to Defendant Epiq Global.

83. Plaintiff's last day with Defendants was January 5, 2024.

84. Upon information and belief, Defendants replaced Plaintiff with an employee in their 20's.

85. Defendants discriminated against Plaintiff due to her disabilities, gender and age, failed to accommodate Plaintiff and retaliated against Plaintiff in violation of the ADA, Title VII, the ADEA, the PHRA and the PFPO.

86. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I – DISABILITY DISCRIMINATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

87. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

88. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendants and its agents as being disabled.

89. Plaintiff was qualified to perform the job.

90. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

91. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

92. Defendants did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

93. Plaintiff's disabilities motivated Defendants' decision to take adverse actions against Plaintiff.

94. The purported reason for Defendants' decision is pretextual.

95. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

96. The above actions by Defendants also constitute a failure to accommodate and a failure to engage in the required interactive process.

97. As a result of Defendants' unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

98. Defendants' conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – DISABILITY DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

99. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

100. Plaintiff is a "qualified individual with a disability" as that term is defined under the

PHRA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendants and its agents as being disabled.

101. Plaintiff was qualified to perform the job.

102. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

103. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

104. Defendants did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

105. Plaintiff's disabilities motivated Defendants' decision to constructively discharge Plaintiff.

106. The purported reason for Defendants' decision is pretextual.

107. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

108. The above actions by Defendants also constitute a failure to accommodate and a failure to engage in the required interactive process.

109. As a result of Defendants' unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – DISABILITY DISCRIMINATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

110. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

111. Plaintiff is a "qualified individual with a disability" as that term is defined under the PFPO because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendants and its agents as being disabled.

112. Plaintiff was qualified to perform the job.

113. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

114. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

115. Defendants did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

116. Plaintiff's disabilities motivated Defendants' decision to constructively discharge Plaintiff.

117. The purported reason for Defendants' decision is pretextual.

118. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

119. The above actions by Defendants also constitute a failure to accommodate and a failure to engage in the required interactive process.

120. As a result of Defendants' unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – GENDER DISCRIMINATION
## <u>TITLE VII OF THE CIVILE RIGHTS ACT OF 1964, AS AMENDED</u>

121. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

122. Plaintiff is a member of protected classes in that she is female.

123. Plaintiff was qualified to perform the job.

124. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

125. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

126. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

127. The reasons cited by Defendants for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

128. Defendants terminated Plaintiff.

129. As a result of Defendants' unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT V – GENDER DISCRIMINATION
## <u>PENNSYLVANIA HUMAN RELATIONS ACT</u>

130. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

131. Plaintiff is a member of protected classes in that she is female.

132. Plaintiff was qualified to perform the job.

133. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

134. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

135. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

136. The reasons cited by Defendants for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

137. Defendants terminated Plaintiff.

138. As a result of Defendants' unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VI – GENDER DISCRIMINATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

139. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

140. Plaintiff is a member of protected classes in that she is female.

141. Plaintiff was qualified to perform the job.

142. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

143. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

144. No legitimate, non-discriminatory reasons exist for the above cited adverse employment

actions that Plaintiff suffered.

145. The reasons cited by Defendants for the adverse employment actions that Plaintiff

suffered are pretext for discrimination.

146. Defendants terminated Plaintiff.

147. As a result of Defendants' unlawful gender discrimination, Plaintiff has suffered damages

as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this

Complaint, *infra.*

## COUNT VII – AGE DISCRIMINATION
## <u>AGE DISCRIMINATION IN EMPLOYMENT ACT</u>

148. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

149. Plaintiff was born in 1967.

150. Plaintiff was qualified to perform the job.

151. Defendants terminated Plaintiff.

152. Defendants treated younger employees more favorably than Plaintiff.

153. Defendants had no legitimate non-discriminatory reason for their actions.

154. As a result of Defendants' unlawful age discrimination, Plaintiff has suffered damages as

set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra*.

## COUNT VIII – AGE DISCRIMINATION
## <u>PENNSYLVANIA HUMAN RELATIONS ACT</u>

155. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

156. Plaintiff was born in 1967.

157. Plaintiff was qualified to perform the job.

158. Defendants terminated Plaintiff.

159. Defendants treated younger employees more favorably than Plaintiff.

160. Defendants have no legitimate non-discriminatory reason for their actions.

161. As a result of Defendants' unlawful age discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IX – AGE DISCRIMINATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

162. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

163. Plaintiff was born in 1967.

164. Plaintiff was qualified to perform the job.

165. Defendants terminated Plaintiff.

166. Defendants treated younger employees more favorably than Plaintiff.

167. Defendants had no legitimate non-discriminatory reason for its actions.

168. As a result of Defendants' unlawful age discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT X – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

169. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

170. Plaintiff engaged in activity protected by the ADA.

171. Plaintiff requested reasonable accommodations due to her disabilities to Defendants.

172. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

173. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT XI – RETALIATION
## PHILADELPHIA HUMAN RELATIONS ACT

174. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

175. Plaintiff engaged in activity protected by the PHRA.

176. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

177. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT XII – RETALIATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

178. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

179. Plaintiff engaged in activity protected by the PFPO.

180. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

181. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Kelly Simone, requests that the Court grant her the following relief against Defendants:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Liquidated damages;

(d)     Emotional pain and suffering;

(e)     Reasonable attorneys' fees;

(f)     Recoverable costs;

(g)     Pre and post judgment interest;

(h)     An allowance to compensate for negative tax consequences;

(i)     A permanent injunction enjoining Defendants, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA, Title VII, the ADEA, the PHRA and the PFPO.

(j)     Order Defendants to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)     Order Defendants to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: September 2, 2025          By:   */s/David M. Koller*
                                       David M. Koller, Esquire
                                       Jordan D. Santo, Esquire
                                       2043 Locust Street, Suite 1B
                                       Philadelphia, PA 19103
                                       215-545-8917
                                       davidk@kollerlawfirm.com
                                       jordans@kollerlawfirm.com

19

*Counsel for Plaintiff*